UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHELENE KRAMER,

      Plaintiff,

v.

COMMISSIONER of the Social Security Administration,

      Defendant.

16-CV-434
DECISION AND ORDER

---

On May 31, 2016, the plaintiff, Michelene Kramer, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Items 1; 9 at 17-27. On October 17, 2016, Kramer moved for judgment on the pleadings, Docket Item 11, and on November 21, 2016, the Commissioner responded and cross moved for judgment on the pleadings, Docket Item 13.

For the reasons stated below, the Court denies Kramer's motion and grants the Commissioner's cross motion.

## **BACKGROUND**

### I. PROCEDURAL HISTORY

On January 22, 2013, Kramer applied for Supplemental Security Income benefits ("SSI"). Tr. 68. She claimed that she had been disabled since April 25, 2012, due to depression, panic attacks, "[i]ntestines [e]xploded," lower back pain-arthritis, and heel spurs. Tr. 68-69.

On June 25, 2013, Kramer received notice that her application was denied because she was not disabled under the Act. Tr. 82-89. She requested a hearing before an administrative law judge ("ALJ"), Tr. 90-91, which was held on November 6, 2014. Tr. 101. The ALJ then issued a decision on January 15, 2015, confirming the finding that Kramer was not disabled. Tr. 15-27. Kramer appealed the ALJ's decision, but her appeal was denied, and the decision then became final. Tr. 1-3. On May 31, 2016, Kramer filed this action, asking this Court to review the ALJ's decision. Docket Item 1.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Kramer's objection. Kramer was examined by several different providers but only two, John Schwab, D.O., and Leslie Bixby, FNP-BC, are of particular significance to Kramer's arguments that the ALJ erred.

### A. John Schwab, D.O.

On May 5, 2013, and by referral of the Social Security Administration ("SSA"), Dr. John Schwab conducted a consultative internal medicine examination of Kramer. Tr. 371-74. Dr. Schwab reported that Kramer's "chief complaints" included depression, panic attacks, lower back pain, leg pain, and leg numbness. Tr. 371. He conducted a physical exam of her hands and noted a grip strength of "5/5" bilaterally and "intact" hand and finger dexterity. Tr. 373. After examining Kramer's back, Dr. Schwab noted that Kramer had "full flexion, extension, lateral flexion bilaterally, and full rotary

2

movement bilaterally" in her lumbar spine.[1]  *Id.*  He also conducted a "straight leg test" and determined that Kramer had a reduced range of motion in her left leg but a normal range of motion in her right.  *Id.*  Dr. Schwab opined that Kramer had "no restrictions."  *Id.*

### B.     Leslie Bixby, FNP

On March 5, 2014, Kramer saw Family Nurse Practitioner ("FNP") Leslie Bixby.[2]  Tr*.* at 495-98.  Kramer complained of "continued back pain though right hand pain has improved" and stated that she "fell while working the other day."  Tr. 495.  FNP Bixby noted that Kramer was experiencing pain in her left thoracic[3] area.  *Id.*

As part of her objective findings, FNP Bixby noted that Kramer's grip strength in her hands was five out of five on the left and four plus out of five on the right.  Tr. 496.  While an x-ray demonstrated "arthritic changes" in Kramer's right hand, Kramer reported that she could "use her hand" and that it felt "better, though still sore."  Tr. 497.  FNP Bixby recommended that Kramer continue her previously-prescribed NSAID treatment and advised that surgery would be the next treatment option.  *Id.*  She further noted that

---

[1] The lumbar spine refers to the lower back.  *See* https://medlineplus.gov/ency/article/007350.htm.

[2] The record indicates that Kramer also saw FNP Bixby several times before the March 5, 2014 visit emphasized in the ALJ's opinion.  For example, she saw FNP Bixby on May 23, 2013, for a follow-up visit after hernia surgery, Tr. 491; on August 30, 2013, for a follow-up visit with complaints of "aching leg pain," Tr. 486; on December 16, 2013, for a sick visit with complaints of upper respiratory symptoms, Tr. 481; and on February 5, 2014, for an annual physical exam with complaints of fatigue and right hand pain, Tr. 476.

[3] The thoracic area relates to the thorax or chest.  *See thoracic*, AM. JUR., PROOF OF FACTS: ATTORNEY'S ILLUSTRATED MEDICAL DICTIONARY at T38 (3d ed. 2002).

an x-ray of Kramer's back was "unremarkable other than degenerative changes in lumbar spine." *Id.* On that same day, FNP Bixby opined in a letter that Kramer was "able to work in a light duty capacity." Tr. 394.

On October 10, 2014,[4] Kramer returned to FNP Bixby for a routine visit and in preparation for her disability review hearing. Tr. 507. On that day, FNP Bixby completed both the standard RFC questionnaire and her usual treatment notes. Tr. 395-400, 507-10. At the visit, Kramer presented with what a nurse described as the "usual issues" and complained specifically of "lower, mid back pain, hand pain and grip weakness." Tr. 507. Kramer also told FNP Bixby that she was "unable to work," *id.*, and that she could "use her hand" and it felt "better though still sore." Tr. 510. FNP Bixby noted that Kramer's grip strength was "5/5" on the left and "3/5" on the right. Tr. 509. She examined Kramer's back and noted that Kramer's x-rays were "unremarkable other than degenerative changes in lumbar spine." *Id.* FNP Bixby did not modify Kramer's treatment plan but instead recommended that Kramer continue her current course of medication. *Id.*

---

[4] Between Kramer's March and October visits to FNP Bixby, she also visited her twice in May 2014. Tr. 491-94, 499-502. On May 23, Kramer visited FNP Bixby for a follow-up visit after hernia surgery. Tr. 491. Kramer had declined hernia surgery in the past, but "ended up in hospital and had [three] hernias removed on" April 26, 2014. She was given pain medication, and, by May 23, her symptoms had resolved. Tr. 491. On the May 23 visit, FNP Bixby noted that Kramer's back x-rays continued to be "unremarkable other than degenerative changes in lumbar spine." Tr. 493. With regard to Kramer's depression, FNP Bixby noted that Kramer's "[m]ood [wa]s fair." *Id.*

On May 28, 2014, Kramer saw FNP Bixby for a "sick visit" with complaints of "abdominal pain." Tr. 499. On that visit, FNP Bixby referred Kramer to Dr. Theodore Wells, Jr., a gastroenterologist, for her abdominal issues. Tr. 501.

4

On the RFC questionnaire, FNP Bixby checked "NO" when asked whether Kramer would be able to sustain full-time employment at any exertional level. Tr. 400. FNP Bixby stated that Kramer was "[i]ncapable of even 'low stress' jobs" based on Kramer's chronic pain and depression symptoms. Tr. 397. FNP Bixby further specified "pre-2011" as the "earliest date" that the reported symptoms and limitations applied. Tr. 400.

### III. THE ALJ'S DECISION

In denying Kramer's application, the ALJ evaluated her claim under the SSA's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 416.920(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 416.920(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 416.920(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 416.920(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 416.920(a)(4)(iv); 416.920(d)-(e). The RFC is a holistic

5

assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. See 20 C.F.R. § 416.945.

After determining the claimant's RFC, the ALJ completes step four. § 416.920(e). If a claimant can perform past relevant work, the claimant is not disabled and the analysis ends. § 416.920(f). But if the claimant cannot, the ALJ proceeds to step five. §§ 416.920(a)(4)(iv); 416.920(f).

In the fifth and final step, the Commissioner has the burden of showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); § 416.920(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

Here, the ALJ determined at step one that Kramer had not engaged in substantial gainful activity since applying for SSI benefits. Tr. 20. At step two, he found that Kramer had the following severe impairments: osteoarthritis; plantar fasciitis of the bilateral heels; degenerative disc disease of the lumbar spine; status-post hernia repair; depression; and anxiety. Id. At step three, the ALJ determined that Kramer's severe impairments did not meet or medically equal the criteria of any impairments listed in SSA regulations. Tr. 20-22.

In assessing Kramer's RFC, the ALJ considered Kramer's subjective symptoms, the objective medical evidence, the submitted opinion evidence, her hearing testimony,

6

and her reported life activities. Tr. 22-25. He found that Kramer's subjective limitations were inconsistent with and uncorroborated by the medical evidence, her hearing testimony regarding her ability to continue working, and her self-reported daily activity. *Id.* As a result, the ALJ concluded that Kramer's statements and testimony regarding her alleged limitations were not credible. *Id.* He then assigned "no weight" to Dr. Schwab's opinion, "great weight" to FNP Bixby's March 5, 2014 opinion ("March opinion"), but "very little weight" to FNP Bixby's October 10, 2014 opinion ("October opinion").[5] *Id.*

At step four, the ALJ determined that Kramer has the RFC

to perform light work . . . that involves no more than simple tasks and instructions; she is able to complete no more than simple tasks independently; she is able to maintain a regular schedule; she can learn new tasks; she is able to relate adequately with others, appropriately deal with stress . . . able to occasionally maintain attention and concentration, but would be able to maintain attention and concentration for two hours at a time . . .is able to perform complex tasks with supervision.

*Id.* He then determined that Kramer could not perform any past relevant work. Tr. 22.

The vocational expert ("VE") testified that, based on Kramer's RFC and his expertise, she would be able to perform the requirements of three separate jobs, all of which exist within the national economy. Tr. 26, 57-64. He testified that Kramer would be able to work as a "cleaner, housekeeping," a cafeteria attendant, and a cashier.

---

[5] This document is alternatively referred to as the "October 15, 2014" opinion or the "October 10, 2014" opinion in Kramer's briefs, the Commissioner's brief, the ALJ decision, and Kramer's medical transcript. There is good reason for the alternative references: While the document was received by Kramer's attorney on October 15, 2014, it was completed by FNP Bixby on October 10, 2014, and it is indexed and dated within Kramer's medical records as "10/10/14." This Court will refer to the document simply as the October opinion.

Tr. 26. At step five, the ALJ accepted that testimony, concluded that Kramer could work, and therefore found that she was not disabled. *Id.*

## STANDARD OF REVIEW

I. **DISTRICT COURT REVIEW**

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court must accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)). In other words, a district court does not review the factual basis of the Commissioner's disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

I. **ALLEGATIONS**

Kramer objects to the ALJ's assignment of great weight to FNP Bixby's March opinion but very little weight to her October opinion. Docket Item 11 at 18. She specifically argues that the ALJ erred in finding that the October opinion was inconsistent with the evidence in the record, including FNP Bixby's own treatment notes

8

and Kramer's testimony at the hearing. *Id.* at 21-23. For that reason, Kramer argues that the ALJ's finding is not supported by substantial evidence, a conclusion that would warrant remand for proper consideration of FNP Bixby's opinions. *Id.* at 18-22.

## II. ANALYSIS

Because the ALJ's decision at issue—that FNP Bixby's March opinion should be afforded great weight but her October opinion should be afforded very little weight—is well supported by the ALJ's analysis and by substantial evidence in the record, Kramer's objections fail and the Commissioner's motion is granted.

When determining a plaintiff's RFC, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c).

> [O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. . . . 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists.

*Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2009)). *See* 20 C.F.R. § 416.902(a) (defining acceptable medical source).[6] Thus, while the ALJ could consider the opinions of "other sources"—including nurse practitioners at the time Kramer's claim was adjudicated—he was not obliged to assign weight or give deference to such sources. *Id.* On the other hand, it was incumbent on the ALJ to "explain the weight given to

---

[6] SSA regulations now list a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairment within his or her licensed scope of practice" as an "[a]cceptable medical source," but only for "claims filed . . . on or after March 27, 2017." 20 C.F.R. § 416.902(a)(7). *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62,560, 62,568 (proposed Sept. 9, 2016).

9

opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6. When there is conflicting evidence in the claimant's record, "[t]he consistency of the opinion with the other evidence in the record is a proper factor for an ALJ to consider when weighing an opinion from an 'other source.'" *Id.* at *4 (citing 20 C.F.R. § 416.927(d)).

Here, the ALJ's decision to assign different weights to FNP Bixby's two opinions is indeed supported by substantial evidence.

First, as a nurse practitioner, FNP Bixby was considered an "other source" for disability determinations at the time Kramer's claim was adjudicated, and the ALJ was therefore under no obligation to afford any weight to either of her opinions. SSR 06-03p, 2006 WL 2329939, at *2; *see Genier,* 298 Fed. App'x at 108. Despite this, the ALJ afforded both opinions some weight in his holistic assessment of Kramer's RFC, demonstrating that the ALJ factored them both into his consideration. Tr. 24.

Second, FNP Bixby's own treatment notes support the ALJ's treatment of her two opinions. During both visits, FNP Bixby completed treatment notes that included 1) Kramer's subjective complaints; 2) the objective examination and results; 3) any recommended treatment or follow up; and 4) resultant changes to Kramer's medications, if applicable. Tr. 495-98, 507-10. At both visits, Kramer complained of pain in her back and right hand. Tr. 499, 507-09. And on both days, x-rays of her back were "unremarkable other than degenerative changes in lumbar spine." Tr. 497, 509.

At the March visit, FNP Bixby measured Kramer's grip strength at "5/5" on the left and "4-/5" on the right. Kramer reported that she "could use her hand" and that it felt "better, though still sore." Tr. 497. FNP Bixby's March opinion concluded that Kramer was able to work "in a light duty capacity." Tr. 394.

At the October visit, FNP Bixby measured Kramer's grip strength at "5/5" on the left and "3/5" on the right. Tr. 509. Although Kramer had slightly decreased grip strength in her right hand, she reported that she "could use her hand" and that it felt "better, though still sore"—identical to what she reported at the March visit. Tr. 510.

Other than the slightly decreased grip strength in one hand, nothing else changed between the March and October visits. But in FNP Bixby's October opinion, she opined that since "pre-2011," Kramer had been experiencing symptoms and limitations that make her unable to work in *any* exertional capacity. Tr. 400. Because FNP Bixby's notes do not demonstrate any change in Kramer's health other than slightly decreased grip strength, the ALJ reasonably concluded that FNP Bixby's October opinion was not consistent with her treatment notes. Tr. 24.[7]

Third, Kramer's own testimony and admissions during the relevant period support the ALJ's decision. Specifically, the ALJ noted that Kramer's self-reported work and level of activity belied FNP Bixby's October opinion that Kramer was unable to work at any exertional level. Tr. 22-25. The ALJ cited a number of admissions by Kramer,

---

[7] FNP Bixby's October opinion explained that Kramer's impairments were based in part on her depression, Tr. 397, but the ALJ explained how substantial evidence from several doctors support the conclusion that Kramer's depression and other mental health impairments were sufficiently under control so that she could engage in substantial gainful activity. Tr. 23.

11

including various statements to her medical providers, a disability report filled out on her behalf by her attorney, and her testimony during the hearing. *Id.*

For example, on February 27, 2013, one month after she filed an application for supplemental security income, Kramer reported to SSA that she was currently working and that her conditions did not require her to make any changes to her work activity. Tr. 181-82. At an appointment in October 2013, she said that she was working twenty hours per week at the First Niagara Arena and cleaning houses on the side. Tr. 548. Indeed, at the hearing before the ALJ in November 2014, Kramer testified that she continued to clean houses—performing "normal cleaning" activities including vacuuming; lifting and carrying up to ten pounds; and cleaning bathrooms. Tr. 37-38. Kramer also testified that she used public transportation, went for walks, attended church, did laundry, cleaned her apartment, painted ceramics, watched television, read, and spent four or five hours every day with her grandchildren. Tr. 38, 41-43.

Considering all this, the ALJ's ruling is consistent with Kramer's own statements about her abilities during the relevant period. Further, Kramer's testimony and statements to her providers (including FNP Bixby) indicate that Kramer's limitations were considerably less than those suggested by FNP Bixby's October opinion. For example, while FNP Bixby opined in October that Kramer could not work at *any* exertional level, Kramer continued to work cleaning houses—performing activities that required at least some exertion, including vacuuming, lifting and carrying up to ten pounds, and cleaning bathrooms. Tr. 37-38. Kramer's demonstrated and admitted continued ability to work is thus consistent with FNP Bixby's March opinion that Kramer could perform light-duty work. Tr. 394. In other words, despite Kramer's current

assertion to the contrary, Docket Items 11 at 22-23, 14 at 2-3, her own testimony, statements, and demonstrated ability to work support the ALJ's decision. Tr. 22-25.

Finally, although Kramer purports to have "serious concerns" regarding the ALJ's impartiality, Docket Item 11 at 23, there is no evidence of bias in the record. The ALJ fairly evaluated the medical evidence and did not arbitrarily assign weight to FNP Bixby's various opinions. In fact, he systematically evaluated each medical opinion, including those from FNP Bixby, and he consistently compared each opinion to the other medical evidence to determine the amount of weight to assign it. Tr. 22-25.

For example, the ALJ assigned no weight to the opinion from the SSA doctor, Dr. Schwab, because it was inconsistent with the medical evidence of record. Tr. 24. More specifically, Dr. Schwab examined Kramer and concluded that she had no physical restrictions whatsoever. Tr. 24, 373. The ALJ compared Dr. Schwab's opinion to Kramer's treatment record, Tr. 23-24, and correctly observed that Dr. Schwab's opinion was inconsistent with the other evidence of record, including Kramer's "long history of back pain and various other physical ailments that cause her at least some limitations." Tr. 24, 373. He thus assigned Dr. Schwab's opinion no weight. Tr. 24.

The ALJ used the same process to determine the weight assigned to each of FNP Bixby's opinions. Tr. 22-24. After determining that Kramer's statements and testimony exaggerated her symptoms, the ALJ carefully and thoughtfully reviewed Kramer's medical history in light of FNP Bixby's opinions, eventually finding that her March opinion was supported by the evidence but her October opinion was not. *Id.*

13

## **CONCLUSION**

The ALJ's decision here neither was contrary to the substantial evidence in the record nor did it result from any legal error. Therefore, for the reasons stated above, Kramer's motion for judgment on the pleadings is DENIED, the Commissioner's cross motion for judgment on the pleadings is GRANTED, the complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: November 30, 2018
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE